**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 04-CV-22829-SEITZ/BANDSTRA**

**SHANNON LEVY-ROWLEY,**

     **Plaintiff,**

v.

**WORLDWIDE ASSOCIATION OF SPECIALTY**
**PROGRAMS, a Utah corporation, and THE CARIBBEAN**
**CENTER FOR CHANGE, LTD. d/b/a TRANQUILITY BAY,**
**R & B BILLING, LLC, a Utah corporation, JAY KAY,**
**KEN KAY, ROBERT LICHFIELD, LYNN PRETZFELD,**
**TEEN HELP, LLC, a Utah limited liability company,**
**VERIFY USA, INC., a Florida corporation, PEACOX**
**ENTERPRISES, LLC, a Utah limited liability**
**corporation, and ROBERT BROWNING LICHFIELD**
**FAMILY PARTNERSHIP, a Utah partnership**

     **Defendants**

_____/



### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff SHANNON LEVY-ROWLEY sues Defendants WORLDWIDE ASSOCIATION OF

SPECIALTY PROGRAMS and THE CARIBBEAN CENTER FOR CHANGE, LTD. a/k/a

TRANQUILITY BAY, R & B BILLING, LLC, a Utah corporation, TEEN HELP, LLC, a Utah limited

liability company, VERIFY USA, INC., a Florida corporation, PEACOX ENTERPRISES, LLC, a

Utah limited liability corporation, ROBERT BROWNING LICHFIELD FAMILY PARTNERSHIP,

a Utah partnership, JAY KAY, KEN KAY, ROBERT LICHFIELD, and LYNN PRETZFELD, and

alleges:

    1.      This is an action in excess of $15,000, exclusive of costs, interest, and attorney's fees.

2.   Plaintiff SHANNON LEVY-ROWLEY ["Levy"] is a resident of Broward County, Florida and sui juris.

3.   Defendant WORLDWIDE ASSOCIATION OF SPECIALTY PROGRAMS ["WWASP"] is a Utah corporation with its principal place of business in St. George, Utah.

4.   Defendant THE CARIBBEAN CENTER FOR CHANGE, LTD ["Tranquility Bay"] is a Jamaican corporation with its principal place of business in Montego Bay.

5.   Defendant R & B BILLING, LLC ["R & B"] is a resident of St. George, Utah and sui juris.

6.   Defendant TEEN HELP, LLC ["Teen Help"] is a Utah limited liability company with its principal place of business in St. George, Utah.

7.   Defendant VERIFY USA, INC. ["Verify USA"] is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

8.   Defendant PEACOX ENTERPRISES, LLC ["Peacox"] is a resident of St. George, Utah and sui juris.

9.   Defendant ROBERT BROWNING LICHFIELD FAMILY LIMITED PARTNERSHIP [RBL Family Partnership"] is a Utah partnership and sui juris.

10.  Defendant JAY KAY ["Jay Kay"] is a resident of St. George, Utah and sui juris.

11.  Defendant KEN KAY ["Ken Kay"] is a resident of St. George, Utah and sui juris.

12.  Defendant ROBERT LICHFIELD ["Lichfield"] is a resident of St. George, Utah and sui juris.

13.     Defendant LYNN PRETZFELD ["Pretzfield"] is a resident of Miami-Dade County, Florida and sui juris.

14.     At all times relevant to this action, Defendants Ken Kay, Jay Kay, Lichfield, Pretzfeld, and Verify USA were actual and/or apparent agents of WWASP, Tranquility Bay and/or Teen Help.

15.     At all times relevant to this action, Defendants Ken Kay, Jay Kay, Lichfield, Pretzfield, and Verify USA were authorized to act on behalf of WWASP, Tranquility Bay and/or Teen Help, and did in fact act on behalf of WWASP, Tranquility Bay and/or Teen Help.

16.     At all times relevant to this action, Defendants Ken Kay, Jay Kay, Lichfield, and Pretzfield, and Verify USA held themselves out as individuals authorized to act on behalf of WWASP, Tranquility Bay and/or Teen Help.

17.     This Court has jurisdiction over this action pursuant to Fla.Stat. § 48.193 (a) and § 48.193 (f) because each of the defendants:

        a.      operates, engages in, and carries on business in Florida;

        b.      has agents in Florida;

        c.      has caused injury to persons or property in Florida arising out of acts or omissions outside Florida while they were engaged in solicitation and/or service activities in Florida.

18.     Venue is properly laid in Miami-Dade County because one or more of the Defendants resides in Miami-Dade County and/or conducts business in Miami-Dade County, Florida.

19.   All conditions precedent to the filing of this action have occurred, been waived, or satisfied.

20.   At all times relevant to this action, up to and including the present, WWASP, directly and/or through its actual and/or apparent agents, conducted substantial and not isolated business activity in Florida. Specifically, WWASP, directly and/or through its agents and/or affiliates and subsidiaries:

   a.   engaged in a systematic campaign in Florida to recruit parents of troubled teenagers to enroll their children in its programs, including the parents of the plaintiff;

   b.   conducted extensive marketing and advertising of its programs in Florida directed at Florida residents, including the parents of the plaintiff;

   c.   conducted seminars and workshops for parents of troubled teens in Florida, including the parents of the plaintiff, in an attempt to induce them to enroll their children in its programs;

   d.   operated interactive internet websites and message boards in Florida and/or directed at parents and/or children in Florida enrolled in their programs, including the parents of the plaintiff;

   e.   entered into contracts with parents of teenagers in Florida to enroll their children in its programs, including the parents of the plaintiff;

   f.   maintained agents and/or employees in Florida.

21.   At all times relevant to this action, up to and including the present, Tranquility Bay, directly and/or through its actual and/or apparent agents, conducted substantial and not

isolated business activity in Florida. Specifically, Tranquility Bay, directly and/or through its agents and/or affiliates and subsidiaries:

a.     engaged in a systematic campaign in Florida to recruit parents of troubled teenagers to enroll their children in its programs, including the parents of the plaintiff;

b.     conducted extensive marketing and advertising of its programs in Florida directed at Florida residents, including the parents of the plaintiff;

c.     conducted seminars and workshops for parents of troubled teens in Florida, including the parents of the plaintiff, in an attempt to induce them to enroll their children in its programs;

d.     operated interactive internet websites and message boards in Florida and/or directed at parents and/or children in Florida enrolled in their programs, including the parents of the plaintiff;

e.     entered into contracts with parents of troubled teenagers in Florida to enroll their children in its programs, including the parents of the plaintiff;

f.     maintained agents and/or employees in Florida.

22.     At all times relevant to this action, up to and including the present, Tranquility Bay, directly and/or through its actual and/or apparent agents, conducted substantial and not isolated business activity in Florida. Specifically, Tranquility Bay, directly and/or through its agents and/or affiliates and subsidiaries:

Page 5 of 34

     a.    engaged in a systematic campaign in Florida to recruit parents of troubled teenagers to enroll their children in its programs, including the parents of the plaintiff;

     b.    conducted extensive marketing and advertising of its programs in Florida directed at Florida residents, including the parents of the plaintiff;

     c.    conducted seminars and workshops for parents of troubled teens in Florida, including the parents of the plaintiff, in an attempt to induce them to enroll their children in its programs;

     d.    operated interactive internet websites and message boards in Florida and/or directed at parents and/or children in Florida enrolled in their programs, including the parents of the plaintiff;

     e.    entered into contracts with parents of troubled teenagers in Florida to enroll their children in its programs, including the parents of the plaintiff;

     f.    maintained agents and/or employees in Florida.

23.    At all times relevant to this action, up to and including the present, WWASP purposefully availed itself of Florida by some or all of the aforementioned acts.

24.    At all times relevant to this action, up to and including the present, Tranquility Bay purposefully availed itself of Florida by some or all of the aforementioned acts.

25.    At all times relevant to this action, up to and including the present, Teen Help purposefully availed itself of Florida by some or all of the aforementioned acts.

26. At all times relevant to this action, WWASP owned and/or operated a network of facilities throughout the country and overseas for minor children. It also operated as the parent company of Tranquility Bay.

27. At all times relevant to this action, Teen Help marketed and promoted WWASP facilities, including Tranquility Bay.

28. At all times relevant to this action, Teen Help and its agents and/or employees induced parents of teenagers to place their children in WWASP-affiliated schools, including Tranquility Bay.

29. At all times relevant to this action, Teen Help and its agents and/or employees affirmatively recommended WWASP-affiliated schools, including Tranquility Bay, to parents of teenagers, including the parents of the plaintiff.

30. At all times relevant to this action, Teen Help was owned, operated, managed and/or controlled by WWASP.

31. At all times relevant to this action, Ken Kay and Lichfield were owners and/or officers and directors of WWASP.

32. At all times relevant to this action, WWASP, Ken Kay, Jay Kay and Lichfield, exercised control over the management and day to day operations of Tranquility Bay, including, but not limited to, control over personnel and hiring, policies and procedures, student recruitment and solicitation, and the concerning the care, treatment, and supervision of students enrolled at Tranquility Bay.

33.     At all times relevant to this action,  WWASP, Ken Kay, Jay Kay and Lichfield controlled, managed, directed and/or approved of all decisions concerning the management and operation of Tranquility Bay,

34.     At all times relevant to this action,  Jay Kay was in charge of all operations at Tranquility Bay, including the hiring, training, and supervision of staff members.  He also was in charge of establishing and enforcing policies at Tranquility Bay.

35.     At all times relevant to this action, Tranquility Bay was wholly owned, operated, controlled and/or  managed by WWASP, Ken Kay, Jay Kay and Lichfield.

36.     At all times relevant to this action, Pretzfield was responsible for the recruitment and placement of students in South Florida in WWASP-run facilities, including Tranquility Bay.

37.     At all times relevant to this action, Pretzfeld served as the South Florida representative for Teen Help.

38.     At all times relevant to this action, Teen Help routinely directed parents in the South Florida area who called their toll free hotline to Pretzfeld, who they identified as their South Florida representative.

39.     At all times relevant to this action, Pretzfeld held herself out to parents, including those of the plaintiff, as a representative of Teen Help and/or WWASP.

40.      Pretzfeld maintained an office in Miami-Dade County with the sign "Teen Help" on the door.  She also distributed literature in Miami-Dade County and throughout South Florida on behalf of Teen Help, operated a local website under the name "Teen Help Southeast" using a toll-free number financed and maintained in whole or in part by

Teen Help and/or WWASP and its affiliated entities, and conducted seminars and held meetings in which she held herself out as a representative of Teen Help and/or WWASP.

41. Pretzfeld received compensation for these services directly and/or through Verify USA, a corporation owned and/or operated by her and her husband.

42. Pretzfield, individually and in concert with Teen Help and Verify USA, caused and/or facilitated Levy's placement in Tranquility Bay.

43. At all times relevant to this action, up to and including the present, Tranquility Bay was the alter ego of WWASP and formed solely for the fraudulent and improper purposes of facilitating a scheme to defraud the parents who engaged its services and for shielding it from liability for illegal acts it knowingly engaged it, including, but not limited to, civil conspiracy, fraud, and child abuse.

44. At all times relevant to this action, up to and including the present, Defendant R& B Billing was the alter ego of WWASP and formed solely for the fraudulent and improper purposes of facilitating a scheme to defraud the parents who engaged its services and for shielding it from liability for illegal acts it knowingly engaged it, including, but not limited to, civil conspiracy, fraud, and child abuse.

45. At all times relevant to this action, up to and including the present, Defendant Teen Help was the alter ego of WWASP and formed solely for the fraudulent and improper purposes of facilitating a scheme to defraud the parents who engaged its services and for shielding it from liability for illegal acts it knowingly engaged it, including, but not limited to, civil conspiracy, fraud, and child abuse.

46.  Upon information and belief, WWASP, Ken Kay, Jay Kay and Lichfield have incorporated and operate numerous other similar corporations for the same fraudulent and improper purposes, as well as for illicitly funneling profits from these fraudulent activities out of the United States, including, but not limited to, R & B Billing and Teen Help.

47.  At the time Tranquility Bay was established, WWASP, Ken Kay, Jay Kay and Lichfield knew that they were engaging in the aforementioned unlawful acts and established Tranquility Bay as part of, and in furtherance of, their conspiracy to defraud the parents who engaged its services.

48.  At all times relevant to this action, Tranquility Bay and WWASP maintained legal custody over Levy and/or acted *in loco parentis.*

49.  At all times relevant to this action, each of the Defendants advertised and promoted Tranquility Bay as "a Specialty Boarding School" where, "in addition to academic curriculum, students receive instruction and direction in behavior modification, emotional growth, and personal development."

50.  Promotional videotapes and literature provided to Levy and other parents featured pictures of Jamaican beaches and mentioned field trips involving horseback riding, snorkeling, and other recreational activities. They also indicated that students would receive instruction in music and languages.

51.  These representations were lies. In fact, Tranquility Bay was nothing more than a juvenile prison for teenagers operated by a crew of unskilled, untrained, and unlicensed individuals, many of whom had little to no experience working with adolescents.

Page 10 of 34

52. Tranquility Bay had no certified or trained teachers on staff, nor did it have any staff or employees who were trained and/or certified to handle children with disabilities who were suicidal, violent, or suffered from severe mental or emotional problems.

53. Tranquility Bay's "academic program" consisted of students teaching themselves with textbooks, and being forced to write 5,000 word essays under restrictive time limits explaining why they deserved to be punished for their behavior.

54. Students were prohibited from contacting their parents in many cases for more than one year, and in some instances, held against their will once they turned 18.

55. On or about December 15, 2000, Levy's parents enrolled her in Tranquility Bay.

56. Prior to enrolling Levy in Tranquility Bay, Levy's mother specifically advised the defendants and/or their agents, including Pretzfield, that Levy had been diagnosed with bipolar disorder and had been hospitalized twice for severe depressive and suicidal behavior. She also specifically advised the defendants and/or their agents, including Pretzfield, that prior to enrolling in Tranquility Bay that Levy had been enrolled in a program for severely emotionally troubled children and that she had a history of violent behavior.

57. Notwithstanding receipt of this information, Tranquility Bay agreed to enroll Levy in its program and assured her parents that it was capable of handling their daughter's problems. Pretzfield also personally assured Levy's parents of this, even though she knew or should have known it to be false.

58. Tranquility Bay, WWASP, and Pretzfield never disclosed to Levy's parents at the time they enrolled her in their program that several other schools run by WWASP had been

investigated for child abuse and child safety violations and/or had been shut down by the governments in the countries in which they were located.

59.   They also failed to disclose to Levy's parents at the time they enrolled her that their "parent representatives" and recruiters, including Defendant Prezfield, were working on a commission basis and were paid $1,000.00 or more for each child they recruited to any school operated by WWASP.

60.   Levy became severely depressed upon arriving at Tranquility Bay, and within one week, attempted to jump off a second story balcony.

61.   Tranquility Bay provided Levy with no counseling after this incident, despite her severe emotional instability and her obvious need for therapy.  Instead, it placed her in a separate wing with other children suffering from a variety of unrelated behavioral and psychological disorders and forced her to lie flat on her stomach for periods of up to 12 hours at a time, with intermittent breaks of only five minutes every hour or so.

62.   Levy was forced to remain in this wing, which was known as "Observation Placement," for eight consecutive weeks. During this time, Levy received no academic instruction or counseling and was constantly emotionally abused and berated by Tranquility Bay's staff.   She also did not receive her medication on time, which caused her to become severely agitated and suffer panic attacks.

63.   On or about January, 2001, while in Observation Placement, Levy grew agitated and was forcibly restrained by three staff members.  Instead of using proper methods to restrain Levy, the staff members pulled her arms behind her back and dropped her on the ground, causing her jaw to fracture.

64.   Following the incident, Levy was taken to a local medical facility, where she was given stitches for her jaw.  The doctors told the staff member who accompanied her that she should come back in one week to have the stitches removed.  However, Levy was never taken back to the medical facility and had to wait more than one month to have the stitches removed at Tranquility Bay.  Levy never received x-rays to determine the nature or extent of the damage to her jaw.

65.   Additionally, when the doctor hired by Tranquility Bay to remove the stitches finally arrived, he did not have the proper tools to remove the stitches and was forced to remove them with a needle.

66.   Levy's parents were never told about the extent of her injuries or how they actually occurred, and in fact, were lied to when they inquired as to these matters.

67.   Shortly after the stitches were removed, Levy's jaw began to pop when she ate.  As time went on, Levy experienced increasing difficulty opening her mouth and eating. Levy repeatedly complained to staff members and the doctor who visited Tranquility Bay about the pain she was experiencing with her jaw, but the staff ignored her. Ultimately, the problem became so severe that she could barely open her mouth to eat.

68.   On or about December, 2001, the problems with Levy's jaw became so severe that the director of Tranquility Bay was forced to call Levy's mother and ask her to take Levy to a doctor to have her condition evaluated.

69.   When Levy's mother arrived at Tranquility Bay, Levy's jaw had so seriously deteriorated that she was forced to take her back to Florida to have her examined by a specialist.

70.   Levy was subsequently diagnosed with tempomandibular joint disorder ("TMJ") and forced to undergo extensive splint therapy, as well as two surgeries to repair the damage done to her jaw by Tranquility Bay staff members.

71.   Levy's physicians have indicated she will require a third surgery, and that the damage to her jaw may be permanent. She continues to experience severe jaw pain and is restricted to a diet of soft foods and baby food.

72.   Numerous other students enrolled in Tranquility Bay and other WWASP facilities have experienced similar physical and psychological abuse at the hands of untrained and unqualified staff.

### COUNT I – NEGLIGENCE
### (against Tranquility Bay)

73.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

74.   As Levy's legal guardian and/or the institution that acted *in loco parentis* for Levy, Tranquility Bay owed a duty to Levy to exercise reasonable care in providing for her safety and general welfare. It also owed her a duty to hire qualified persons to run and supervise its programs.

75.   Tranquility Bay breached its duty to Levy in some or all of the following ways:

    a.   requiring her to live in unsafe and unsanitary conditions;

    b.   failing to provide her with adequate or proper medical care when it knew or should have known she required it;

    c.   failing to provide her with adequate educational or instructional facilities;

d.  failing to properly train staff members in the proper methods of restraining students;

e.  failing to exercise reasonable care in restraining or handling students it knew or should have known had a propensity for violent behavior;

f.  failing to hire qualified persons to staff its programs;

g.  retaining unqualified staff members when it knew or should have known that they were unqualified to perform their jobs and posed a safety risk to the plaintiff and other similarly situated individuals;

h.  withholding information from her legal guardians which would have enabled them to obtain proper medical care for her;

i.  failing to provide plaintiff with foods that would lessen the severity of the injury to her jaw;

j.  failing to investigate the medical professionals it took plaintiff to for treatment of injuries she sustained on its premises to insure they were competent or qualified to treat her;

k.  accepting plaintiff in a program which it knew or should have known would likely pose a danger to her health, safety and welfare;

l.  representing to plaintiff and/or her legal guardian that it was qualified to care for her when it knew or should have known it was not.

76.  As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper.  Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT II– VICARIOUS LIABILITY
### (against WWASP)

77.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

78.     At all times relevant to this action,  Tranquility Bay was a subsidiary and/or related instrumentality of WWASP.

79.     At all times relevant to this action,  WWASP exercised  control over the management and operation of Tranquility Bay as more fully described  in paragraphs 20-24, including, but not limited to, control over decisions concerning the care, education, and treatment of Levy.

80.     Tranquility Bay owed a duty to Levy to exercise reasonable care in  providing for her safety and general welfare. It also owed her a duty to hire  qualified persons to run and supervise its programs.

81.     Tranquility Bay breached its duty to Levy as more fully described in paragraph 58.

82.     As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

83.     WWASP is vicariously liable for the negligent acts of Tranquility Bay.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper.   Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT III– VICARIOUSLY LIABILITY – ALTER EGO
## (against WWASP)

84.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs
        1-72.

85.     At all times relevant to this action, Tranquility Bay was the alter ego of WWASP.

86.     Tranquility Bay was formed for one or more fraudulent or improper purposes as more
        fully described in paragraphs 27-30.

87.     At all times relevant to this action, WWASP functioned as the alter ego of Tranquility
        Bay.   WWASP exercised virtual total control over the operations of Tranquility Bay,
        and held itself out to students and the public, including Levy, as being the owner and
        operator of Tranquility Bay.

88      At all times relevant to this action, WWASP and Tranquility Bay disregarded corporate
        formalities in their operations, including, but not limited to, commingling  funds
        between the two entities, sharing employees, materials, and facilities.

89.     Tranquility Bay owed a duty to Levy to exercise reasonable care in  providing for her
        safety and general welfare.  It also owed her a duty to hire  qualified persons to run and
        supervise its programs.

90.      Tranquility Bay breached its duty to Levy as more fully described in paragraph 58.

91.     As a direct and proximate result of some or all of the foregoing negligent acts, Levy
        has been damaged in excess of $15,000.

92.     WWASP is vicariously liable under the alter ego doctrine for the negligent acts of
        Tranquility Bay.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper. Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT IV – NEGLIGENCE
### (against Jay Kay)

93.  Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

94.  Kay owed a duty to Levy as the owner and/or operator of Tranquility Bay and as her legal custodian to exercise reasonable care in providing for her safety and general welfare. He also owed her a duty to hire qualified persons to run and supervise its programs.

95.  Kay breached his duty to Levy in some or all of the following ways:

    a.  requiring her to live in unsafe and unsanitary conditions;

    b.  failing to provide her with adequate or proper medical care when it knew or should have known she required it;

    c.  failing to provide her with adequate educational or instructional facilities;

    d.  failing to properly train staff members in the proper methods of restraining students;

    e.  failing to exercise reasonable care in restraining or handling students it knew or should have known had a propensity for violent behavior;

    f.  failing to hire qualified persons to staff its programs;

g.     retaining unqualified staff members when it knew or should have known that they were unqualified to perform their jobs and posed a safety risk to the plaintiff and other similarly situated individuals;

h.     withholding information from her legal guardians which would have enabled them to obtain proper medical care for her;

i.     failing to provide plaintiff with foods that would lessen the severity of the injury to her jaw;

j.     failing to investigate the medical professionals it took plaintiff to for treatment of injuries she sustained on its premises to insure they were competent or qualified to treat her;

k.     accepting plaintiff in a program which it knew or should have known would likely pose a danger to her health, safety and welfare;

l.     representing to plaintiff and/or her legal guardian that it was qualified to care for her when it knew or should have known it was not.

96.     As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper. Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT V – NEGLIGENCE
### (against Lichfield)

97.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

98.    Lichfield owed a duty to Levy as the owner and/or operator of WWASP to exercise reasonable care in providing for her safety and general welfare. He also owed her a duty as the individual in charge of personnel and the operations of Tranquility Bay and WWASP to hire qualified persons to run and supervise its programs and to insure that she received prompt and adequate medical treatment.

99.    Lichfield breached his duty to Levy in some or all of the following ways:

a.    requiring her to live in unsafe and unsanitary conditions;

b.    failing to provide her with adequate or proper medical care when it knew or should have known she required it;

c.    failing to provide her with adequate educational or instructional facilities;

d.    failing to properly train staff members in the proper methods of restraining students

e.    failing to exercise reasonable care in restraining or handling students it knew or should have known had a propensity for violent behavior;

f.    failing to hire qualified persons to staff its programs;

g.    retaining unqualified staff members when it knew or should have known that they were unqualified to perform their jobs and posed a safety risk to the plaintiff and other similarly situated individuals;

h.    withholding information from her legal guardians which would have enabled them to obtain proper medical care for her;

i.    failing to provide plaintiff with foods that would lessen the severity of the injury to her jaw;

j.    failing to investigate the medical professionals it took plaintiff to for treatment of injuries she sustained on its premises to insure they were competent or qualified to treat her;

k.    accepting plaintiff in a program which it knew or should have known would likely pose a danger to her health, safety and welfare;

l.    representing to plaintiff and/or her legal guardian that it was qualified to care for her when it knew or should have known it was not.

100.    As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper.   Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT VI – NEGLIGENCE
### (Against Ken Kay)

101.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

102.    Ken Kay owed a duty to Levy as the owner and/or operator of WWASP to exercise reasonable care in providing for her safety and general welfare.  He also owed her a duty as the individual in charge of personnel and the operations of Tranquility Bay and WWASP to hire qualified persons to run and supervise its programs and to insure that she received prompt and adequate medical treatment.

103.    Ken Kay breached his duty to Levy in some or all of the following ways:

a.    requiring her to live in unsafe and unsanitary conditions;

b.   failing to provide her with adequate or proper medical care when it knew or should have known she required it;

c.   failing to provide her with adequate educational or instructional facilities;

d.   failing to properly train staff members in the proper methods of restraining students

e.   failing to exercise reasonable care in restraining or handling students it knew or should have known had a propensity for violent behavior;

f.   failing to hire qualified persons to staff its programs;

g.   retaining unqualified staff members when it knew or should have known that they were unqualified to perform their jobs and posed a safety risk to the plaintiff and other similarly situated individuals;

h.   withholding information from her legal guardians which would have enabled them to obtain proper medical care for her;

i.   failing to provide plaintiff with foods that would lessen the severity of the injury to her jaw;

j.   failing to investigate the medical professionals it took plaintiff to for treatment of injuries she sustained on its premises to insure they were competent or qualified to treat her;

k.   accepting plaintiff in a program which it knew or should have known would likely pose a danger to her health, safety and welfare;

l.   representing to plaintiff and/or her legal guardian that it was qualified to care for her when it knew or should have known it was not.

104.　As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper.   Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT VII– NEGLIGENCE
### (Against Pretzfeld)

105.　Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

106.　As the individual in charge of recruitment and placement of students in Tranquility Bay for the South Florida area and the person who facilitated and/or caused Levy to be placed in Tranquility Bay, Prezfield owed a duty to Levy to exercise reasonable care in her placement of Levy in Tranquility Bay.  Specifically, Prezfield owed Levy a duty to:

a.  insure that Tranquility Bay had adequate and competent staff to meet Levy's educational, physical, and medical needs;

b.  insure that she was placing her in a facility where she would not be physically abused or harmed;

c.  investigate Tranquility Bay to make certain that it was safe and a facility that was suitable for Levy's educational, physical, and medical needs.

107.　Prezfield breached her duty to Levy in some or all of the following ways:

a.　failing to adequately investigate the safety and sanitary conditions of Tranquility Bay;

b.      failing to ascertain that Tranquility Bay was an appropriate facility for Levy before recommending that she be placed there;

c.      failing to ascertain that Tranquility Bay had adequate educational or instructional facilities before recommending that she be placed there;

d.      failing to ascertain that Tranquility Bay had adequate and properly trained staff members before recommending that she be placed there;

e.      failing to inform Levy's parents that Tranquility Bay was not a suitable facility for an individual with Levy's psychiatric history;

f.      failing to advise Levy's parents of numerous other instances of child abuse and neglect that had occurred at Tranquility Bay and other WWASP-affiliated schools;

f.      failing to advise Levy's parents that numerous other WWASP-affiliated schools had been investigated by governmental agencies and had been closed down or cited with health and safety violations;

g.      failing to advise Tranquility Bay of Levy's psychiatric history when she knew or should have known that Tranquility Bay was not a suitable facility for a person with Levy's psychiatric history.

108.    As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper. Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT VIII – NEGLIGENCE (Assumption of Duty)
### (against Pretzfeld)

109. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

110. Pretzfeld recommended to Levy's parents that they place her in Tranquility Bay.

111. Pretzfeld assumed a duty to Levy and her parents in recommending Tranquility Bay to exercise reasonable care in making her recommendation. Specifically, Prezfield assumed a duty to Levy prior to recommending Tranquility Bay to:

a. determine that Tranquility Bay had adequate and competent staff to meet Levy's educational, physical, and medical needs;

b. insure that she was recommending a facility where she would not be physically abused or harmed;

c. investigate Tranquility Bay to make certain that it was safe and was suitable for Levy's educational, physical, and medical needs;

d. disclose to Levy hazards which she knew or should have known existed at Tranquility Bay and which would likely cause Levy harm, including, but not limited to, poorly trained staff and inadequate medical care;

e. disclose prior incidents of abuse or neglect which she knew or should have known about.

112. Prezfield breached her duty to Levy in some or all of the following ways:

a. failing to adequately investigate the safety and sanitary conditions of Tranquility Bay;

b.     failing to ascertain that Tranquility Bay was an appropriate facility for Levy before recommending that she be placed there;

c.     failing to ascertain that Tranquility Bay had adequate educational or instructional facilities before recommending that she be placed there;

d.     failing to ascertain that Tranquility Bay had adequate and properly trained staff members before recommending that she be placed there;

e.     failing to inform Levy's parents that Tranquility Bay was not a suitable facility for an individual with Levy's psychiatric history;

g.     failing to advise Tranquility Bay of Levy's psychiatric history when she knew or should have known that Tranquility Bay was not a suitable facility for a person with Levy's psychiatric history;

h.     failing to inform Levy's parents of prior incidents of child abuse or neglect which she knew or should have known about.

113.    As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper.    Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

### COUNT IX – VICARIOUSLY LIABILITY – ALTER EGO
### (Against R & B Billing)

114.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

115. At all times relevant to this action, R & B Billing was the alter ego of WWASP and/or Tranquility Bay.

116. R & B Billing was formed by Ken Kay, Lichfield, and/or other WWASP principals for one or more fraudulent or improper purposes as more fully described in paragraphs 27-30.

117. In particular, R & B Billing was established for the sole purpose of funneling monies which were intended for the use and benefit of children at Tranquility Bay and other WWASP related facilities to Ken Kay, Lichfield, and other WWASP principals and/or principals of WWASP related entities.

118. At all times relevant to this action, R & B Billing and its agents knowingly diverted funds which were intended for the use and benefit of children at Tranquility Bay and other WWASP related facilities to Ken Kay, Lichfield, and other WWASP principals and/or principals of WWASP related entities.

119. The diversion of these funds deprived children at Tranquility Bay, including Levy, of basic necessities, such as soap, towels, and minimally nutritious food. It also contributed to the lack of basic medical care, which caused injury to Levy and other children at Tranquility Bay.

120. The diversion of these funds was authorized and approved by Ken Kay, Lichfield, and other WWASP principals and/or principals of WWASP related entities.

121. At all times relevant to this action, R & B Billing functioned as the alter ego of WWASP and/or Tranquility Bay.

122.   At all times relevant to this action, R & B Billing disregarded corporate formalities in its operations, including, but not limited to, commingling funds between WWASP, Tranquility Bay, and other WWASP related entities, sharing employees, materials, and facilities.

123.   Tranquility Bay owed a duty to Levy to exercise reasonable care in providing for her safety and general welfare. It also owed her a duty to hire qualified persons to run and supervise its programs.

124.   Tranquility Bay breached its duty to Levy as more fully described in paragraph 58.

125.   As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

126.   R & B Billing is vicariously liable under the alter ego doctrine for the negligent acts of Tranquility Bay.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper. Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT X – VICARIOUS LIABILITY
### (Against Verify USA)

127.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

128.   At all times relevant to this action, Pretzfeld acted as an agent of Verify USA.

129.   Pretzfeld negligently caused Levy to be placed in Tranquility Bay and/or negligently recommended Tranquility Bay to Levy's parents while acting within the course and scope of her agency with Verify USA.

130. Pretzfeld breached her duty to Levy as more fully described in paragraphs 103-111.

131. As a direct and proximate result of Pretzfeld's negligence, Levy has suffered damages in excess of $15,000.

132. Verify USA is vicariously liable for the acts and omissions of Pretzfeld committed within the scope of her agency with Verify USA.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper. Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT XI – FALSE IMPRISONMENT
### (against Pretzfeld)

133. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

134. On or about December 15, 2000, Pretzfeld unlawfully restrained Levy in her home while transporting her to Tranquility Bay.

135. During this time, Levy was handcuffed to furniture in Pretzfeld's home and was denied permission to leave.

136. Pretzfeld unlawfully detained Levy and deprived her of her liberty and/or assisted her husband in detaining Levy and depriving her of her liberty.

137. As a direct and proximate result of Pretzfeld's negligence, Levy has suffered damages in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper. Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT XII – FALSE IMPRISONMENT
### (against Verify USA)

138.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

139.    At all times relevant to this action, Pretzfeld and her husband, Jeff, were agents of Verify USA.

140.    On or about December 15, 2000, Pretzfeld unlawfully restrained Levy in her home while transporting her to Tranquility Bay.

141.    During this time, Levy was handcuffed to furniture in Pretzfeld's home and was denied permission to leave.

142.    Pretzfeld unlawfully detained Levy and deprived her of her liberty and/or assisted her husband in detaining Levy and depriving her of her liberty.

143.    At the time Pretzfeld and her husband unlawfully restrained Levy, they were acting within the course and scope of their agency with Verify USA.

144.    As a direct and proximate result of Pretzfeld's negligence, Levy has suffered damages in excess of $15,000.

145.    Verify USA is vicariously liable for the acts and omissions of Pretzfeld committed within the scope of her agency with Verify USA.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and other relief this Court deems just and proper.   Plaintiff reserves the right to amend her complaint to state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT XIII – NEGLIGENCE
### (against Peacox and RBL Family Partnership)

146.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72.

147.   Upon information and belief, Peacox and RBL Family Partnership own individually and or collectively the premises on which Tranquility Bay is located in Jamaica.

148.   As the landowners of the premises on which Tranquility Bay is located, Peacox and RBL Family Partnership owed a duty to Levy to exercise reasonable care in maintaining its premises in reasonably safe condition and to warn Levy of unknown hazards.

149.   At the time Levy entered Tranquility Bay against her will, she did not know and could not with the exercise of reasonable care have discovered that the staff and/or owners of Tranquility Bay routinely abused or mistreated children in their custody and deprived them of adequate food and hygiene.

150.   Peacox and RBL Family Partnership breached its duty to Levy in some or all of the following ways:

a.   failing to adequately maintain the physical premises on which Tranquility Bay was operated in a manner so that she and other students would not suffer physical harm;

b.   failing to warn her of prior incidents of child abuse or neglect that had occurred on their property which they knew or should have known about;

        c.    failing to warn her the staff and/or owners of Tranquility Bay routinely abused or

        mistreated children in their custody and deprived them of adequate food and hygiene.

151.    As a direct and proximate result of Peacox and RBL Family Partnership's negligence,

        Levy has suffered damages in excess of $15,000.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and

other relief this Court deems just and proper.   Plaintiff reserves the right to amend her complaint to

state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## COUNT XIV – VICARIOUS LIABILTY–ALTER EGO
### (against Peacox and RBL Family Partnership)

152.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs
        1-72.

153.    Defendants Peacox and RBL Family Partnership are alter egos of WWASP and/or
        Tranquility Bay and formed solely for the fraudulent and improper purposes of
        facilitating a scheme to defraud the parents who engaged its services and for shielding
        it from liability for illegal acts it knowingly engaged it, including, but not limited to,
        civil conspiracy, fraud, and child abuse.

154.    Peacox and RBL Family Partnership were formed by Ken Kay, Lichfield, and/or other
        WWASP and/or Tranquility Bay principals for one or more fraudulent or improper
        purposes as more fully described in paragraphs 27-30.

155.    In particular, Peacox and RBL Family Partnership were established for the sole
        purpose of funneling monies which were intended for the use and benefit of children

at Tranquility Bay and other WWASP related facilities to Ken Kay, Lichfield, and other WWASP principals and/or principals of WWASP related entities.

156.   At all times relevant to this action, Peacox and RBL Family Partnership and its agents knowingly diverted funds which were intended for the use and benefit of children at Tranquility Bay and other WWASP related facilities to Ken Kay, Lichfield, and other WWASP principals and/or principals of WWASP related entities.contributed to the lack of basic medical care, which caused injury to  Levy and other children at Tranquility Bay.

157.   The diversion of these funds was authorized and approved by Ken Kay, Lichfield, and other WWASP principals and/or principals of WWASP related entities.

158.   At all times relevant to this action, Peacox and RBL Family Partnership functioned as the alter egos of WWASP and/or Tranquility Bay.

159.   At all times relevant to this action, Peacox and RBL Family Partnership disregarded corporate formalities in its operations, including, but not limited to, commingling funds between WWASP, Tranquility Bay, and other WWASP related entities, sharing employees, materials, and facilities.

160.   Tranquility Bay owed a duty to Levy to exercise reasonable care in  providing for her safety and general welfare.  It also owed her a duty to hire  qualified persons to run and supervise its programs.

161.    Tranquility Bay breached its duty to Levy as more fully described in paragraph 58.

162.   As a direct and proximate result of some or all of the foregoing negligent acts, Levy has been damaged in excess of $15,000.

163.   R & B Billing is vicariously liable under the alter ego doctrine for the negligent acts

of Tranquility Bay.

WHEREFORE Plaintiff requests this Court award her compensatory damages, interest, and

other relief this Court deems just and proper.   Plaintiff reserves the right to amend her complaint to

state a claim for punitive damages upon the making of an appropriate evidentiary proffer.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all issues and all counts of this Complaint so triable.

Respectfully submitted,

**LAW OFFICE OF**
**DAVID H. POLLACK, LLC**
540 Brickell Key Drive, Suite C-1
Miami, Florida 33131
Tel No.: (305) 372-5900

BY:   _____
**DAVID H. POLLACK**
**Florida Bar No. 0955840**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed and faxed this

_____ day of December, 2004 to: Alan Kipnis, Esq., Adorno & Yoss, P.A., 350 E. Last Olas Blvd.,

Suite 1700, Ft. Lauderdale, FL   33301; and Francisco Angones, Esq., Eighth Floor, Courthouse

Tower, 44 W. Flagler St., Miami, Fl   33130.

_____
**DAVID H. POLLACK**